UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

UNITED STATES OF AMERICA,

Plaintiff,

v.

MARCUS SCOTT BUTLER,

Defendant.

Case No. 3:25-cr-00211-AKB

**MEMORANDUM DECISION AND ORDER**

Pending before the Court is Defendant Marcus Scott Butler's Amended Motion to Suppress and Request for Hearing Pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) (Dkt. 29; Dkt. 27). The Government opposes the motion, arguing that a hearing is not warranted (Dkt. 31). For the following reasons, the Court denies the motion.

## I. BACKGROUND

In late 2023, Lewiston Police Department detectives began investigating Butler for suspected drug distribution (Dkt. 29-6 at 5). During the nearly year-long investigation, neighbors reported suspected drug activity, and confidential informants and reliable sources reported witnessing Butler sell fentanyl or purchasing fentanyl directly from him (*id.* at 5–6). On June 20, 2024, law enforcement searched the residence of another person who lived at Butler's residence and found digital scales, packaging materials, drug paraphernalia, and methamphetamine (*id.* at 5).

On August 15, 2024, detectives observed Butler leave his residence on his motorcycle and travel to a known drug location (*id.* at 6). While detectives monitored the location, a subject later identified as Confidential Source 1 (CS1) arrived and entered the residence (*id.*). After

approximately five minutes, CS1 left the residence, entered a vehicle with three other occupants, and traveled to a nearby gas station, where they remained for several minutes (*id.*; Dkt. 31 at 3). Officers stopped the vehicle after it left the gas station (Dkt. 29-6 at 6; Dkt. 31 at 3). CS1 had no identification but provided officers the name Michael Ricketts and his date of birth, which officers confirmed was Michael Ricketts' birth date. During a subsequent search of the vehicle, officers found CS1 in possession of a half-smoked fentanyl pill, which CS1 told officers he had just purchased from Butler at the residence (Dkt. 31 at 3–4; Dkt. 29-7 at 2; Dkt. 29-6 at 6).

Detectives later observed Butler leave the known drug location and return to his residence (Dkt. 29-6 at 6). Later that day, officers stopped a vehicle Butler was driving (*id.*). During the stop, officers found drug paraphernalia inside the passenger's purse and a large sum of cash in Butler's wallet (*id.* at 7; Dkt. 29 at 4).

On August 16, 2024, Detective Morbeck applied for a search warrant for Butler's secondary residence at 701 6th Avenue, Apartment 2, in Lewiston, Idaho, from a Nez Perce County Judge, who authorized the search (Dkt. 29-6; Dkt. 29 at 4; Dkt. 31 at 2). The supporting affidavit described the ongoing investigation, the August 15 encounter with CS1, and the traffic stop involving Butler (Dkt. 29-6 at 5–8). The search warrant yielded approximately 500 fentanyl pills, 50 grams of methamphetamine, and over $7,500 (Dkt. 31 at 5).

Two months after the search, a man identifying himself as Michael Ricketts contacted officers and disclosed that he had a brother, Daniel Ricketts, who had previously used his identifying information (Dkt. 31 at 5). Michael Ricketts lived in Texas and was not the person officers had contacted on August 15 (*id.*). Officers subsequently determined that CS1 was Daniel Ricketts, who had provided his brother's name and birth date during the August 15 encounter (*id.* at 3, 5).

On July 15, 2025, a federal grand jury indicted Butler on a charge of Possession of a Controlled Substance with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) (Dkt. 2 at 1).[1] Butler now seeks a *Franks* hearing concerning the affidavit's statements and omissions (Dkt. 29).

## II. LEGAL STANDARD

The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. A *Franks* hearing allows a defendant to challenge the sufficiency of an affidavit supporting a search warrant if the police obtain it by deliberately or recklessly presenting false, material information to the issuing judge. 438 U.S. at 171–72.

To obtain a *Franks* hearing, a defendant must make a two-fold showing. First, the defendant must make a "substantial preliminary showing" that the affiant "knowingly and intentionally, or with reckless disregard for the truth," included a false statement or omission in the warrant affidavit. *Id.* at 155–56. Allegations of negligence or innocent mistake are insufficient. *Id.* at 171. Also, conclusory "allegations of deliberate falsehood or of reckless disregard for the truth" are not enough; rather, the allegations of deliberateness or recklessness "must be accompanied by an offer of proof." *Id.* Because affidavits are presumed valid, the defendant bears a heady burden to overcome that presumption. *Id.*

---

[1] Butler was originally charged in Idaho state court with trafficking fentanyl, in violation of Idaho Code § 37-2732D(a)(3), and trafficking methamphetamine, in violation of Idaho Code § 37-2732B(a)(4)(A) (Dkt. 29 at 3). Evidence from the search warrant was ultimately suppressed on state law grounds (*id.*). On June 2025, Butler's state charges were dismissed (*id.*).

If the defendant makes this showing, then the court considers whether the statement or omission was "necessary to the finding of probable cause." *Id.* at 156. "[I]f, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Id.* at 171–72. Probable cause for a search warrant exists where "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

## III. ANALYSIS

Butler argues that Detective Morbeck's alleged misrepresentations and omissions concerning CS1 entitle him to a *Franks* hearing because they undermine the reliability of CS1's statements and the probable cause supporting the search warrant (Dkt. 29 at 7). The Government opposes the motion, arguing Butler fails to make a substantial showing that law enforcement intentionally or recklessly made false or misleading statements or omissions in the search warrant affidavit and that the statements or omissions were material (Dkt. 31 at 1).

The probable cause affidavit states, in relevant part:

> On August 15th, 2024, detectives with the QCDTF began surveillance on Butler and observe [sic] him leave his residence on his motorcycle. Butler drove to another known drug location. While detectives watched the known drug location a subject later arrived on scene. I will refer to the subject as confidential source 1 (CS1). CS1 was inside the known drug location for about 5 minutes and left the residence. Once CS 1 left the residence detectives and patrol officers made contact with CS1 where he/she was found in possession of fentanyl. CS1 admitted to detectives that he/she had just purchased the fentanyl from Butler at that known drug location. After the contact with CS1 detectives observed Butler leave the known drug location and arrive back at his residence.

(Dkt. 29-6 at 6). Butler makes four challenges to the affidavit, which the Court addresses in turn.

**A. CS1's Reliability**

Butler first challenges the affidavit's account of CS1's reliability, alleging that it misrepresents CS1 as a previously known and reliable confidential informant, rather than as "a random individual" previously unknown to law enforcement (Dkt. 29 at 8). Looking at the affidavit, nothing contained therein implies that CS1 was a known informant. It merely states that "a subject later arrived on scene" and that the affiant refers to the subject as "confidential source 1 (CS1)" (Dkt. 29-6 at 6). In contrast, the affidavit expressly describes other sources as "confidential informants and reliable sources" and explains that those sources had direct contact with Butler and witnessed him selling fentanyl or purchased fentanyl directly from him (*id.* at 5). The affiant thus distinguished those sources, whose information corroborated Butler's suspected drug activity, from CS1, whom the affidavit introduces simply as a "subject" who arrived at the location (*id.* at 6). Read as a whole, the affidavit does not imply that CS1 was a previously known or reliable informant. Accordingly, Butler's contention that the affidavit misrepresented CS1's reliability is not supported by the affidavit's language.

**B. CS1's Identity and Criminal History**

Next, Butler contends that Detective Morbeck failed to take basic steps to verify CS1's identity and investigate his background, depriving the magistrate judge of information necessary to assess CS1's credibility (Dkt. 29 at 9, 13–14). The Government acknowledges that relevant criminal history bearing on an informant's reliability should be disclosed, but argues that the criminal history of the person officers believed CS1 to be—Michael Ricketts—was immaterial (Dkt. 31 at 11–13).

Generally, a misstatement in a probable cause affidavit is made with reckless disregard for the truth where the affiant displays a "high degree of awareness of probable falsity." *United States v. Senchenko*, 133 F.3d 1153, 1158 (9th Cir. 1998). Mere negligence in "checking or recording the

facts relevant to a probable-cause determination" is not sufficient to warrant a *Franks* hearing. *United States v. Burnes*, 816 F.2d 1354, 1358 (9th Cir. 1987) (quoting *Franks*, 438 U.S. at 170).

Here, the record establishes, at most, that Detective Morbeck was negligent in failing to verify CS1's identity. Butler acknowledges that there is no evidence Detective Morbeck knew CS1 had provided a false name when Detective Morbeck applied for the warrant (Dkt. 29 at 8–9). Although CS1 had no identification at the scene, he provided his full name and birth date, which officers ran through their system confirming a match to Michael Ricketts (Dkt. 31 at 11). Officers then discussed some uncertainty about whether CS1 matched Michael Ricketts's physical appearance, but ultimately concluded that the discrepancy did not warrant further investigation (*id.*). This is not a situation where law enforcement failed to make any attempt to verify the subject's identity. Rather, officers took steps to verify CS1's identity, and Butler has not shown that they acted with a high degree of awareness that CS1's identity was probably false. *See Senchenko*, 133 F.3d at 1158. Moreover, the later discovery that CS1 was Daniel Ricketts rather than Michael Ricketts does not, by itself, establish that officers recklessly disregarded the truth when relying on the identifying information available to them at the time.

Butler also faults Detective Morbeck for failing to investigate whether CS1 had a criminal history that might bear on his credibility (Dkt. 29 at 13). But the record does not establish that Morbeck failed to investigate CS1's criminal history. Rather, Butler points to the absence of criminal-history information in the probable-cause affidavit, which does not, by itself, establish that Detective Morbeck conducted no such investigation. Nor has Butler identified any criminal-history information that further investigation would have revealed and that might have affected the probable-cause determination. The Government identifies Michael Ricketts' criminal history as three misdemeanor convictions: driving while intoxicated in 2003 and possession of less than two

ounces of marijuana in 2003 and 2005 (Dkt. 31 at 13). The Government argues that these convictions do not bear on credibility and that the most recent conviction dates to more than nineteen years before the warrant application—too remote to have affected the probable-cause determination (*id.*). Butler does not explain how these convictions undermine CS1's credibility or identify any other criminal-history information that further investigation would have revealed. Accordingly, Butler has not made a substantial preliminary showing that Detective Morbeck recklessly omitted material information concerning CS1's identity or criminal history.

**C. CS1's Possession of Fentanyl**

Butler also claims that Detective Morbeck "partially misled the Magistrate when he asserted that CS1 was found in possession of fentanyl pills that came from Mr. Butler" because CS1 possessed only a partially smoked fentanyl pill, which Butler contends would have been "nearly impossible" to have come from him moments earlier (Dkt. 29 at 9). Butler further argues that the affidavit's failure to disclose the small amount and personal-use condition of the fentanyl deprived the magistrate judge of context bearing on CS1's credibility (*id.*). According to Butler, CS1's possession of only half a pill was inconsistent with his claim to have just purchased fentanyl from Butler and supported the alternative inference that CS1 had gone to the residence to sell fentanyl (*id.*). Finally, Butler accuses Detective Morbeck of omitting that CS1 was a passenger in a vehicle with three other occupants, two of whom were known drug users, and that another occupant possessed four fentanyl pills (Dkt. 29 at 9–10; Dkt. 29-9 at 2–3).

The Court agrees with the Government that the affidavit did not state CS1 possessed multiple pills—it merely stated that CS1 "was found in possession of fentanyl" (Dkt. 31 at 13; Dkt. 29-6 at 6). The Court also does not find it implausible for CS1 to have partially smoked a pill within 15 minutes after allegedly purchasing it from Butler (Dkt. 31 at 13). Butler's alternative theory that CS1 went to the residence to sell fentanyl is speculative and does not establish that

Detective Morbeck recklessly or intentionally misrepresented the circumstances of CS1's possession. The Court is likewise unpersuaded that Detective Morbeck recklessly omitted details about the other vehicle's occupants. The fact that another occupant possessed four fentanyl pills does not contradict the affidavit's account that CS1 was found with fentanyl and admitted to purchasing it from Butler (Dkt. 29-6 at 6; Dkt. 29-9 at 2–3). Butler has not shown how the presence of other occupants or the additional fentanyl undermines CS1's account of his own visit to the residence. Accordingly, these alleged misstatements and omissions do not warrant a *Franks* hearing.

**D. CS1's Potential Incentive to Implicate Butler**

Finally, Butler argues that Detective Morbeck should have disclosed that the occupants of the vehicle were allowed to depart after the stop, suggesting that they received some benefit in exchange for CS1's admission that he purchased fentanyl from Butler (Dkt. 29 at 8–10). "Law enforcement officers must ordinarily disclose information regarding whether an informant has ulterior motivations for providing information for a search warrant affidavit." *United States v. Martinez-Garcia*, 397 F.3d 1205, 1216 (9th Cir. 2005). In *Martinez-Garcia*, the Ninth Circuit held that the defendant made a "substantial preliminary showing" based on the "uncontroverted" evidence that police made a deal with an informant, who was facing federal drug charges, to recommend leniency to prosecutors in exchange for the informant's participation in the investigation. *Id.*

Unlike *Martinez-Garcia*, there is nothing in the record indicating that CS1 or the other passengers received any benefit in exchange for the admission. Butler points to the occupants' departure from the scene without being arrested, but he offers no evidence that law enforcement promised or provided favorable treatment in exchange for CS1's statement identifying Butler as his drug source. *See United States v. Hansen*, No. 14-cr-00346-DCN, 2019 WL 3210062, at *1

(D. Idaho July 16, 2019) ("Conclusory 'allegations of deliberate falsehood or of reckless disregard for the truth' are also not enough; rather, the allegations of deliberateness or recklessness "must be accompanied by an offer of proof.").

Even assuming that the officers did not arrest Ricketts because he disclosed his source, the Court concludes that the assumed omission does not undermine the magistrate judge's finding of probable cause. Even if a defendant makes a substantial preliminary showing of deliberately or recklessly false misstatements included in a warrant affidavit, those misstatements must still be material. *United States v. Bennett*, 219 F.3d 1117, 1124 (9th Cir. 2000). "Knowing or reckless falsehoods or omissions are immaterial when the affidavit would still support probable cause after the purported falsehoods are removed and omissions included." *United States v. Christensen*, 624 F. App'x 466, 474 (9th Cir. 2015). When the omission or misstatement relates to the reliability of an informant's information, the Court looks at "whether the informant's information was bolstered by independent police investigation of the tip or corroboration by other confidential informants." *Martinez-Garcia*, 397 F.3d at 1216.

Here, officers observed Butler leave his residence on his motorcycle and travel to the known drug location, where CS1 later arrived and remained for approximately five minutes before leaving and being found in possession of fentanyl (Dkt. 29-6 at 6). CS1 then identified Butler as the person from whom he had purchased the fentanyl (*id.*). But CS1's statement was only one piece of evidence supporting probable cause. The affidavit described a nearly year-long investigation in which other confidential informants and reliable sources reported direct contact with Butler and either witnessed him selling fentanyl or purchased fentanyl directly from him (*id.* at 5–6). Neighbors had also reported suspected drug activity, and the officers' investigation included surveillance of Butler and a prior search of another person who lived at his residence that

yielded digital scales, packaging materials, drug paraphernalia, and methamphetamine (*id.* at 5). This evidence independently corroborated the allegations of Butler's drug-distribution activity. *See Martinez-Garcia*, 397 F.3d at 1216. "The affidavit detailed ample evidence that criminality was afoot at the premises to be searched." *Id.* at 1217. Accordingly, even assuming the affidavit should have disclosed that officers allowed CS1 and the other occupants to leave without arresting them, the omission would not have undermined the magistrate judge's probable-cause determination.

In conclusion, the Court finds that Butler has not carried his burden of establishing that he is entitled to a *Franks* hearing. The record does not establish that Detective Morbeck deliberately or recklessly included false information in the search warrant affidavit or omitted material information. At most, Butler has identified potential errors or omissions, but he has not shown that they resulted from Detective Morbeck acting intentionally or recklessly to mislead the magistrate judge. Nor has Butler shown that the challenged statements or omissions were material to the probable-cause determination. The Court therefore denies his motion.

## IV. ORDER

**IT IS ORDERED that:**

1. Defendant Marcus Scott Butler's Amended Motion to Suppress and Request for Hearing Pursuant to *Franks v. Delaware* (Dkt. 29) and Motion to Suppress and Request for Hearing Pursuant to *Franks v. Delaware* (Dkt. 27) are **DENIED**.

DATED: October 15, 2026

Amanda K. Brailsford

Amanda K. Brailsford
U.S. District Court Judge